657 A.2d 1307

**Marcia RUDICK,**

v.

**Stanley RUDICK, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1994.

Decided May 3, 1995.

Christine Gale, Pittsburgh, for appellant.

Jane O'Connell, Pittsburgh, for appellee.

Before DEL SOLE, FORD ELLIOTT and BROSKY, JJ.

FORD ELLIOTT, Judge.

Stanley Rudick ("Father") appeals the February 28, 1994 order of the Court of Common Pleas of Allegheny County which sustained Marcia Rudick's ("Mother") exceptions to a hearing officer's recommendation that Father was not responsible for college support of his two sons due to estrangement.[1] After careful review, we affirm.

The issue presently before us necessitates only a brief review of the most recent procedural history in this protracted litigation. We hereby adopt the trial court's recitation of the relevant procedural history:

Mother and Father are the parents of two children, Stanley 'Lee' age 23, and James age 20. In April 1991, an order for educational support was entered as to the eldest

1. It would appear, at first glance, that the order appealed from is interlocutory as it is not a final order. However, our review of this matter reveals that the parties agreed to have the hearing officer enter an order for support based on the prior record.

son, Lee. James was living with Father at the time. During James' last year in high school, Father filed an educational support action for James against Mother. In addition, Mother filed for an increase in educational support for Lee.

Both actions were consolidated to be heard in August 1992. Prior to hearing, James returned to his Mother's residence. On August 20, 1992, a hearing was held and a recommendation was issued establishing educational support for the two boys to be paid by Father. Mother filed Exceptions to the recommendation. Before argument on Mother's exceptions, the Supreme Court ruled in *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628 (1992), that parents were not responsible for educational support past high school. On November 23, 1992, Father filed a Motion to Cancel Exceptions and Terminate the Order based on the *Blue* decision. The Motion was denied by order of court dated November 30, 1992. After argument, Mother's exceptions to the August 1992 hearing were dismissed in part and sustained in part. On January 14, 1993, a Motion requesting a hearing on the termination of educational support was presented by Father and a hearing was scheduled for May 21, 1993. This hearing was continued to August 18, 1993. On July 2, 1993, the Pennsylvania legislature passed House Bill 1340 which provides for postsecondary educational costs for adult children whose parents are either separated, divorced, unmarried or otherwise subject to an existing support obligation. On July 21, 1993, Father filed a Petition to Terminate and/or Modify Educational Support alleging: a) that the statute is unconstitutional; and b) even if the statute is constitutional, that he should not be responsible for their educational support due to the estrangement that existed between himself and the children. These issues were scheduled to be heard at the August 1993 hearing. After hearing, a recommendation was issued granting Father's petition. The prior order for educational support was suspended. The hearing officer stated in her explanation

that Father prevailed on his estrangement defense finding that the children had rebuffed Father's attempts at a relationship and that Father was willing to provide for their college education by private agreement. Mother took exceptions to the Recommendation. After argument, this court sustained Mother's exceptions and Father appealed the court's finding that the parties were not estranged.

Trial court opinion, 5/24/94 at 1–3.

Father raises two issues for our review:

I. Whether the Hearing Officer whose Recommendations were overruled by the court below correctly applied the law of Pennsylvania with regard to father's estrangement defense.

II. Whether the Hearing Officer whose Recommendations were overruled by the court below exceeded her scope of authority by basing her findings in part upon her observation of the parties' verbal and non-verbal conduct.

Father's brief at 3.

Before addressing the issues raised by Father, we note that our standard of review of orders entered pursuant to 23 Pa.C.S.A. § 4327, Postsecondary Education Costs,[2] is one

---

**2.** Section 4327, in relevant part, provides as follows:

**§ 4327. Postsecondary educational costs**

(a) General rule.—Where applicable under this section, a court may order either or both parents who are separated, divorced, unmarried or otherwise subject to an existing support obligation to provide equitably for educational costs of their child whether an application for this support is made before or after the child has reached 18 years of age. The responsibility to provide for postsecondary educational expenses is a shared responsibility between both parents. The duty of a parent to provide a postsecondary education for a child is not as exacting a requirement as the duty to provide food, clothing and shelter for a child of tender years unable to support himself. This authority shall extend to postsecondary education, including periods of undergraduate or vocational education after the child graduates from high school. An award for postsecondary educational costs may be entered only after the child or student has made reasonable efforts to apply for scholarships, grants and work-study assistance.

. . . .

of an abuse of discretion. *McGettigan v. McGettigan,* 433 Pa.Super. 102, 639 A.2d 1231 (1994).

> Absent an abuse of discretion, we will not disturb on appeal a properly entered support order. *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984). An abuse of discretion 'is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.' *In re Women's Homeopathic Hospital of Philadelphia,* 393 Pa. 313, 316, 142 A.2d 292, 294 (1958).

*Oeler By Gross v. Oeler,* 527 Pa. 532, 537, 594 A.2d 649, 651 (1991).

 Father first argues that the hearing officer correctly concluded that James and Lee are estranged from him and that this estrangement bars their right to recover support from him for college education expenses.

Under 23 Pa.C.S.A. § 4327(e)(5), the relevant inquiry is whether there has been "any willful estrangement between parent and student caused by the student after attaining majority." In the seminal case of *Milne v. Milne,* 383 Pa.Super. 177, 556 A.2d 854 (1989) (*en banc* ), this court decided that, in addition to other factors, divorced parents do not have a duty to support college-age children if those children willful-

(e) Other relevant factors.—After calculating educational costs and deducting grants and scholarships, the court may order either parent or both parents to pay all or part of the remaining educational costs of their child. The court shall consider all relevant factors which appear reasonable, equitable and necessary, including the following:

(1) The financial resources of both parents.

(2) The financial resources of the student.

(3) The receipt of educational loans and other financial assistance by the student.

(4) The ability, willingness and desire of the student to pursue and complete the course of study.

(5) Any willful estrangement between parent and student caused by the student after attaining majority.

(6) The ability of the student to contribute to the student's expenses through gainful employment. The student's history of employment is material under this paragraph.

(7) Any other relevant factors.

ly estrange themselves from their parents. The *Milne* court opined that the concept of willful estrangement is similar to that of "fault" in spousal support and alimony. *Id.* at 189–90, 556 A.2d at 861.

In *Bedford v. Bedford,* 386 Pa.Super. 349, 563 A.2d 102 (1989), this court stated:

> Estrangement between a parent and child will only relieve or lessen a parent's duty to pay support towards a child's college education when that parent has made a concerted and good faith effort to establish and develop a relationship with his or her child, and the child has unquestionably and willfully rejected the parent's outstretched hand.

*Id.* at 358, 563 A.2d at 106.

Father admits that prior to his sons' attaining the age of majority that he had frequent and significant contacts with both children. The record reflects that for 18 months, James lived with his father. During this time, James completed his junior and senior years in high school. After graduation, James continued to live at his father's home until sometime in August 1992. James left the home after what he described as a "blow-up." Stanley "Lee" testified that in October 1992 Father visited him at college and that as late as November 1992 he had received a card from his father. The note on the card which was read into the record reveals the existence, at that time, of a father/son relationship.

However, Father contends his sons have willfully and unilaterally cut themselves off from him despite his continued hope for a relationship. Father's brief at 11. Mother counters that it was Father who ceased all communication and contact with his sons.

In *Powell v. Conway,* 386 Pa.Super. 1, 562 A.2d 324 (1989), *reversed on other grounds,* 533 Pa. 409, 625 A.2d 641 (1993), this court found that an adult child's estrangement from her father did not relieve the father of his educational support obligation where both father and daughter were responsible for the estrangement. In *Powell,* father paid court ordered child support for his daughter but made no effort to maintain

a relationship with her. The daughter lived with her mother in Florida. When daughter reached majority she travelled to Pennsylvania to visit relatives. While in Pennsylvania, she telephoned her father in an effort to see him. She stated to her father that she would only meet him if he was alone. Father stated he would only meet her if he could bring his wife and children along. The meeting never took place. Subsequently, a petition was filed by daughter seeking support for college expenses. Father alleged the parties were estranged and, therefore, he was not responsible for the payment of college support. The trial court, in granting daughter's petition, determined that this was a case of mutual rejection rather than estrangement resulting solely from a child rejecting her father's loving overtures. In affirming the trial court, we stated that "Both [daughter] and her father are responsible for any estrangement between them." *Id.* at 7, 562 A.2d at 327.

In *Bedford v. Bedford, supra,* 386 Pa.Super. 349, 563 A.2d 102, the adult child, Michael, and his father had not had a relationship since Michael was eleven years old. Father's reasons for discontinuing the relationship were that Michael and his brother continually chided him concerning his actions toward their mother. This behavior along with their negative attitude made his visits intolerable. Michael sought support for college expenses. Father claimed estrangement. The trial court granted Michael's petition for support. In addressing father's estrangement argument, this court stated:

Consequently, we do not find that Michael is without fault for allowing the estrangement between himself and his father *to continue.* However, because Michael cannot be faulted for unilaterally *initiating* the estrangement, this does not provide a basis for denying Michael support from his father for his college education. *Accord Powell v. Conway,* 386 Pa.Super. 1, 562 A.2d 324 (1989) (where both father and daughter are responsible for any estrangement between them, case does not require consideration of daughter's interaction with father 'to reach a just result'). To

conclude otherwise would be to reward father for neglecting his son. This we firmly refuse to do.

*Id.* 386 Pa.Super. at 358, 563 A.2d at 106 (emphasis in original).

Our examination of the record indicates no evidence of estrangement which would relieve Father of his duty of support. It appears to us that after the November 1992 decision in *Blue, supra,* 532 Pa. 521, 616 A.2d 628, and the filing shortly thereafter of Father's petition for termination of educational support, the relationship between Father and his sons deteriorated. While Father claims his sons did not attempt to contact him, his sons claim Father made no effort to contact them. Both Lee and James testified they were confused and angry by the filing of the petition to terminate support.

It is clear to us that there has been a lack of communication between the parties since the filing of the petition to terminate support. James and Lee, however, cannot be blamed for unilaterally initiating the estrangement. Moreover, Father has not demonstrated that he has extended an outstretched hand that has been unilaterally rejected. *Bedford, supra* at 358, 563 A.2d at 106. We agree with the trial court's conclusion that the relationship between Father and his sons is one of disagreement and misunderstanding, not estrangement. *See* trial court opinion, 5/24/94 at 6. Thus, Father's claim that he is entitled to the defense of estrangement must fail.

As we have already decided there was no willful estrangement, it is not necessary for us to address Father's second contention that the hearing officer did not exceed the scope of her authority by rendering findings based on the parties' verbal and nonverbal conduct.

Order affirmed.